NIEMEYER, Circuit Judge,
dissenting:
Relying on 26 U.S.C. § 446(b), the majority permits the IRS simply to characterize the dispute in this case as one involving the taxpayer’s method of accounting and thereby avoid a trial and decision by a factfinder on the fair market value of the taxpayer’s accounts receivable.
During the course of this litigation, the IRS declared that the taxpayer’s valuation of its accounts receivable was an accounting method that did not clearly reflect income. Therefore, the IRS claimed its right under § 446(b) to recompute the taxpayer’s taxes under a method that does clearly reflect income. The problem with this approach was that the IRS and the taxpayer did not dispute a method of accounting, but only the valuation of the taxpayer’s asset — its accounts receivable. All of the taxpayer’s practices properly regarded as methods of accounting were never in dispute, and the methods the taxpayer used clearly reflected income (or loss) to the very last detail.
The IRS and the taxpayer agreed on the taxpayer’s overall method of accounting— the accrual method. The IRS and the taxpayer agreed on how, under the accrual *253 method, to value the taxpayer’s accounts receivable — the mark-to-market method. The IRS and the taxpayer agreed on how to calculate income or loss using the mark-to-market method — by subtracting the market value of the accounts receivable from their book value. The IRS and the taxpayer agreed on the method of determining the market value of the receivables — by reducing the book value to present value by applying a discount rate. The IRS and the taxpayer agreed on the book value of the accounts receivable— $1,073,234-,932. Finally, the IRS and the taxpayer agreed on how to determine the discount rate — by adding a risk premium to the risk-free rate of return. In short, there was no disagreement over the taxpayer’s method of accounting.* Moreover, this agreement on accounting methods resulted in very similar valuations. The IRS and the taxpayer agreed on a value of the taxpayer’s accounts receivable within 2%. The narrow disagreement between the IRS and the taxpayer was over the proper risk premium to add to the risk-free rate of return to get a discount rate to apply to the book value, ultimately to reach the market value. That narrow issue is a factual question that must be resolved by a factfinder.
Under the majority’s view, the taxpayer never receives a trial on the fact of the appropriate risk premium by which to discount the book value of its accounts receivable. Rather, the majority upholds the IRS’s post-trial declaration that the selection of a particular risk premium is a method of accounting within the IRS’s regulatory purview. Under the majority’s view, at no point is the taxpayer entitled to a finding of fact on the disputed issue by a neutral adjudicator. Thus, the IRS may always decree that the taxpayer’s position on valuing accounts receivable fails to clearly reflect income and therefore is subject to recomputation by the IRS under 26 U.S.C. § 446(b) without a trial. The IRS’s authority to regulate the tax accounting system, however, does not reach down to this level of detail, and it should not. If the IRS and the taxpayer disagree on the proper discount percentage to apply to the book value of the taxpayer’s accounts receivable, the taxpayer is entitled to have a factfinder resolve the disagreement.
What is even more troubling in this case is that even if the IRS had such a broad authority to deny the taxpayer a fact trial on its accounts receivable valuation, its exercise of that power was unreasonable and unfair. The IRS undertook to exercise its “clear reflection” authority for the first time in a litigation document prepared after trial. The IRS thus put the taxpayer through an elaborate and costly trial, undertaken to determine the valuation of the accounts receivable, only to then preempt the trial’s results by declaring, during post-trial briefing, that the case was resolvable by IRS fiat under § 446(b). (As the IRS’s internal procedures now recognize, this practice was unreasonable. See Rev. Proc.2002-18 § 7, 2002-1 C.B. 678). Deference to the IRS’s *254 regulatory authority under 26 U.S.C. § 446(b) should be based on more than the post-trial briefing decision of a Department of Justice line attorney. See Bowen v. Georgetown University Hospital, 488 U.S. 204, 213, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (“Deference to what appears to be nothing more than an agency’s convenient litigating position would be entirely inappropriate”).
Even under its own rationale, the majority has chosen the wrong remedy. In cases where the IRS declares unreasonable a taxpayer’s method of accounting, the IRS must still demonstrate that its own method is lawful and not arbitrary. In this case, the bankruptcy court, despite finding several serious flaws with the IRS’s valuation, did not decide whether that valuation was lawful and not arbitrary. The Seventh Circuit, on which the majority relies so heavily, has required just such a remand. See JPMorgan Chase, 458 F.3d at 572 (vacating in part and remanding for evaluation of Commissioner’s chosen valuation method). The majority improperly assumes that even though the bankruptcy court has never addressed the issue, it would nonetheless uphold the IRS’s method. But that is not our decision to make.
My position is not a far-reaching one— only a demand for simple procedural fairness. My position does not deny the IRS any of the authority that it was given under the Internal Revenue Code. I would simply remand this case so that the bankruptcy court can determine the value of the taxpayer’s accounts receivable. The IRS should not be able to avoid such fact-finding simply by declaring that the taxpayer’s “method of accounting” is improper, particularly after agreeing to every aspect of that accounting method. This case centers solely on the proper percentage by which to reduce book value to market value, and up until now, the taxpayer has not had the opportunity to have this issue tried and resolved. Under the majority’s holding, it never will.
In sum, I would reverse the judgment of the district court and remand the case to the district court with instructions to remand the case to the bankruptcy court to make a factual finding on the proper valuation of the taxpayer’s accounts receivable.

 This agreement on the method of accounting makes this case quite different from Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979), on which the majority relies. In Thor Power Tool, the taxpayer's "method of inventory accounting" was "plainly inconsistent with the governing Regulations" and the taxpayer “ 'made no effort to determine the purchase or reproduction cost' of its ‘excess' inventory." Id. at 532-33, 535, 99 S.Ct. 773 (emphasis added). This distinction also applies to JPMorgan Chase & Co. v. Commissioner, 458 F.3d 564, 569 (7th Cir.2006), where the taxpayer’s method of accounting similarly violated IRS regulations. Here, not only was the taxpayer’s method of accounting consistent with all governing law and regulations, but the IRS explicitly agreed with the taxpayer's method in all material respects.